1. Where a general demurrer to the petition is overruled and this court reverses that ruling, the right to amend is not terminated by the judgment of this court, and the issues involved have not become res judicata; *Page 615 
thereafter the suit can be amended or dismissed by the plaintiff at any time before the remittitur from this court has been made the judgment of the court below, and, if dismissed, can be renewed at any time within the period allowed under the Code, § 3-808. 2. The renewal suit stated a cause of action for libel.
 DECIDED APRIL 21, 1945. REHEARING DENIED JUNE 28, 1945.
Miss Madge Moore sued C. E. Gregory, W. D. Cocking, and the Atlanta Journal Company for damages for alleged libel said to have been published in the Atlanta Journal on November 21, 1941. To this petition the defendants filed general and special demurrers, some of which were overruled and some of which were sustained. Gregory v. Moore, 70 Ga. App. 671 (29 S.E.2d 293). The order of the trial court on the matter of the demurrers also contained the following provision: "5. Plaintiff is allowed fifteen days from this date [October 25, 1943] within which to amend the petition so as to meet the grounds of the demurrers which have been sustained." On November 4, 1943, before the plaintiff had amended, and before the end of the time allowed for amendment, the defendants filed a bill of exceptions in which they excepted to the overruling of the general and special demurrers, and the amendment of the plaintiff did not come to this court as a valid part of the record, and this court held that under that state of the record the only question for determination was whether the petition as it stood set forth a cause of action, and on February 22, 1944, handed down the decision that the petition did not set forth a cause of action and that the trial court had erred in overruling the demurrers. On February 29, 1944, the plaintiff withdrew her suit and asked that it be dismissed. On August 10, 1944, she renewed her suit against the same defendants, and to the petition as reported inGregory v. Moore, supra, has made the following material additions: "4. Petitioner shows that on November 21, 1941, the said C. E. Gregory, as reporter for said defendant, the Atlanta Journal Company, self-styled as a staff reporter of said paper, wrote and published in said newspaper published by defendant, the Atlanta Journal Company, on the first page of its issue of November 21, 1941, an article bearing these headlines: `Charges in Talmadge's Ad Utterly False, Cocking *Page 616 
Says Truthful Minutes of Meeting in Records of Regents' by C. E. Gregory, Journal Staff Writer.' Thereby meaning to charge and so state specifically that the report of said meeting made by your petitioner in shorthand was utterly false, and leading the public and especially its readers, and many others, who believed that your petitioner in her capacity as reporter of said meeting held by Cocking with these negroes on the campus of the University of Georgia, was untrue, and that your petitioner had wilfully, falsely, and maliciously reported said meeting, and that she had falsely and maliciously set out these excerpts or extracts from the report of what occurred at the said meeting. That whereas, as a matter of fact, the said excerpts or extracts from said shorthand notes of said meeting held by W. D. Cocking on the campus of the University, in Peabody Hall, with said negroes, on May 18-19, 1938, were absolutely true and correct, and the defendants knew this at the time of said defamatory article herein before referred to printed on November 21, 1941, and that said W. D. Cocking had a full and complete transcript of the report from the shorthand notes taken of said meeting by petitioner — three full and complete copies having been furnished to him — and that the said C. E. Gregory and the Atlanta Journal had access to these copies. That the said so-called interview of said W. D. Cocking by staff writer C. E. Gregory, of the Atlanta Journal, in fact was not a news item, but propaganda, and a studied effort and plan through malice to maliciously charge petitioner with falsehood and misrepresentation to the public and was wilfully false and deceptive, not so much as a news item, but by propaganda and plan to destroy petitioner's character for truth and veracity, and to reflect [on] and destroy her character as a professional reporter. That a copy of said article written for the purpose aforesaid by the said C. E. Gregory and so published and circulated maliciously by the said Atlanta Journal company is hereto attached marked Exhibit `B.'. . 6. [Concerning the statement of the article that Cocking knew nothing about a report that the petitioner was working with a kinsman of the Governor.] This false and malicious statement is the key which unlocks and explains and informs the public the whole purpose of this interview and defamation of plaintiff's character. . . That the patent and obvious purpose on the face of this statement was to say and imply that petitioner was working *Page 617 
for the said Eugene Talmadge, and that for that reason was unworthy of belief, and anything she had to say, or state, or write, was false, and that by reason of the fact that she was working for Governor Talmadge made her unworthy of belief, and with no character for truth and veracity, and that the public should so believe that she or anyone else who was employed to work for Governor Talmadge was unworthy of belief and without character, and thus to condemn her in the eyes of the public and especially with the partisans of the defendants and the opponents of Governor Talmadge. . . that this method was set out in this interview to discredit and to convict petitioner in the eyes of the public as an individual without truth and veracity, and without character privately and professionally as a reporter; that this effort on the part of defendants was Machiavellian in plan, in purpose, and intent, the defendants well-knowing at the time that she was never employed by Governor Talmadge, or working with a kinsman of his, and that said statement is libelous per se. . . 7. . . Cocking says, `Truthful Minutes of Meeting in Records of Regents.'. . that these headlines are false and libelous in every particular; that there is not a word of truth in them, and this was well-known to W. D. Cocking, C. E. Gregory, and the Atlanta Journal Company. They all knew that there was no report of the negro meeting filed by W. D. Cocking with the Board of Regents, and that there was no such report at the time, and none, was filed by W. D. Cocking with the Board of Regents; that the said Cocking was given three copies of this report, that he did not file any of them with the Board of Regents, but on the contrary, he, with clerical aid, rewrote, rose-colored, and expurgated this stenographic report, and filed with the Regents this expurgated copy. That this so-called minutes did not contain many of the excerpts as published in what they called the Talmadge Ad; that the said Cocking studiously avoided and omitted the writing into the said so-called minutes that a negro should be on the Board of Regents. . . That the said Atlanta Journal, C. E. Gregory, and W. D. Cocking knew that these headlines were false and libelous; they had access to the excerpts as heretofore related, and they had access to the copy which Cocking had, not only that, but they all three had access to the minutes of the Board of Regents and to the pamphlet or *Page 618 
report filed by W. D. Cocking with the Board of Regents; they knew by reading these minutes that they did not purport to set forth verbatim what occurred at this negro meeting on the campus in Peabody Hall, May 18-19, 1938. By these headlines they sought to mislead the public and make them believe that petitioner had falsified her record and stenographic notes, and they state to prove this that `anyone interested could find out what the truth was by going to the Board of Regents' office'. . 10. That the following statement in said article is false and misleading: `Any suggestions as to what I believe regarding this matter other than those in the report of the Regents' are unequivocally false and without foundation in fact.' . . and in effect charges that what was written out and printed in these excerpts by your petitioner as to W. D. Cocking's expressed belief on the racial question was untrue and false; in effect saying what was reported was not his views, and that his views could be found in the minutes of the Board of Regents. This misleading statement on his part is made to discredit petitioner, and to have the public believe that he did not [have to?] express these sentiments on the racial question at this meeting of the negroes as shown by the excerpts. He charges petitioner by indirection with falsehood and lying and false reporting, and sidesteps the issue by not stating his belief on these matters, but by referring the public to the minutes of the Board of Regents, to a padded, expurgated document, rose-colored, to deceive the public. 13. The statements made in this interview denying he (Cocking) held these views and denying that he had so expressed himself at this negro meeting, denying the excerpts set out by petitioner as reporter, taken down in shorthand at this meeting, were falsely and maliciously made — that her stenographic notes were false and the transcription as published in the Atlanta Journal, as above mentioned, were false and untrue. Said libelous article charged her in effect with false swearing or perjury, inasmuch as said excerpts were sworn to, and the copy of same so stated. 17. That the advertisement containing the excerpts printed on November 12, 1941 [Talmadge's Ad] in the Atlanta Journal and attached as Exhibit `C' is the advertisement referred to in the caption of Exhibit `B' and that Exhibit `A' (petitioner's excerpts) and Exhibit `B' (Cocking interview) are linked together by the name of Madge Moore contained in both Exhibit *Page 619 
`A' and Exhibit `B.'" The defendants filed general demurrers, which were sustained by the trial court, on the ground that the plaintiff's petition set forth no cause of action, and that under the ruling of this court in the former case reversing the trial court's overruling of the general demurrers there had been an adjudication of the issues such as to bar renewal of the suit. To this ruling of the trial court the plaintiff excepts.
1. The defendants' contention that the plaintiff's renewal suit is barred is without merit. The suit is a renewal of the former suit dismissed before the remittitur in the case was made the judgment of the trial court. This suit was filed within six months of the voluntary dismissal of the former suit. The ruling sustaining the demurrers by the trial court in the first proceedings was conditioned upon the plaintiff's right to amend within a period of fifteen days fixed by the court. However, the trial court had also overruled the defendants' general demurrers, and before the end of the period allowed for the plaintiff to amend, the defendants filed their bill of exceptions to that ruling. The plaintiff could have remedied her case so as to withstand the defendants' demurrers upon the return of the remittitur to the trial court; thus this court's ruling reversing the trial court and sustaining the demurrers of the defendants was not a final adjudication of the issues, as the plaintiff's right to amend still existed at the time of the voluntary dismissal of the case, and the ruling of this court did not finally adjudicate the issues involved in the case. The plaintiff's dismissal of her suit under these conditions did not preclude her from renewing her suit within the six-months' period allowed under the Code, § 3-808. See in this connection,Savannah, Florida Western Ry. Co. v. Smith, 93 Ga. 742
(21 S.E. 157), where it is said: "Where a declaration filed in due time failed, for the want of vitally essential allegations, to set forth a cause of action, but such allegations were afterwards by leave of the court supplied by amendment, and at a subsequent term an order was passed striking the amendment, whereupon the plaintiff dismissed her action and afterwards, within six months, brought another action, which substantially set forth the same cause of action contained in the original *Page 620 
declaration as amended, this second action was a renewal of the first and was not barred by the statute of limitations, although filed more than two years after the cause of action accrued."
2. The plaintiff has in this suit overcome the discrepancies in her earlier petition by alleging that the proceedings reported by her were a part of the advertisement referred to in the allegedly libelous article written in the Atlanta Journal, and by setting forth the entire advertisement, which advertisement as a whole was not before this court in its earlier consideration of the case. While neither the headlines, nor the caption of the article, nor the article itself, relating to the report of the meeting by the plaintiff, in and of itself, could be said to be libelous, it is a question for the jury to decide whether the two taken together constitute a libel as alleged, and whether they charged the plaintiff, in the sense in which they were understood by those reading them, with having written untruthful or false minutes and having made an affidavit that they were true when they in fact were not. The statement by Dr. Cocking that he did not seek to "impugn any improper motives to Miss Moore," and that there might naturally be some variance between a transcript made immediately after taking the notes and one made three and a half years later does not, in view of the particular words of the caption or headline, render the statements innocent as a matter of law. There is nothing libelous in the statement, "He said he didn't know anything about a report that the stenographer is now working with a kinsman of Governor Talmadge."
For the foregoing reasons the judgment of the trial court must be and is
Reversed. Sutton, P. J., and Parker, J., concur.